IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEROME CHOICE,

                    Plaintiff,

      v.

PATRICIA MICHALAK,

                    Defendant.

Case No. 21 C 0060

Hon. Marvin E. Aspen
Hon. M. David Weisman

## SECOND AMENDED COMPLAINT

Plaintiff Jerome Choice ("**Plaintiff**"), by and through his attorneys, and for his Second Amended Complaint against Defendant Patricia Michalak ("**Defendant**"), hereby states as follows:

### Introduction

1. This is a single-count *Bivens* action brought by Plaintiff for compensatory and punitive damages against Defendant.

2. While Plaintiff was a pretrial detainee, Defendant failed to provide Plaintiff with constitutionally adequate medical care when she removed a surgical pin from Plaintiff's recently operated on left hand without consulting knowledgeable medical authority.

3. Plaintiff subsequently experienced severe pain in his left hand, was unable to perform everyday tasks with his left hand, and had to undergo a second surgery on his left hand.

4. Today, Plaintiff continues to experience pain in his left hand, avoids using his left hand, and has been instructed to not lift objects more than 10 to 15 pounds with his left hand.

5. Defendant's acts and omissions amounted to a violation of Plaintiff's rights under the Due Process Clause of the Fifth Amendment of the United States Constitution.

1

**Parties**

6.      Plaintiff is an individual currently residing in Cook County, Illinois.  At the time of the complained of incident, Plaintiff was a pretrial detainee at the Metropolitan Correctional Center, 71 West Van Buren Street, Chicago, Illinois 60605 (the "**MCC**").

7.      At the time of the complained of incident, Defendant was a Nurse Practitioner at the MCC Health Services Department.  In that role, Defendant provided medical care to the inmates housed at the MCC.  The acts and omissions by Defendant that are the subject of this lawsuit arose out of Defendant's performance of her duties in this role.  Defendant Michalak is sued in her individual capacity.

**Jurisdiction and Venue**

8.      This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district.

**Factual Background**

**A.      Plaintiff Severely Injures His Left Hand and Undergoes Necessary Surgery.**

10.      On or about May 10, 2018, Plaintiff suffered a debilitating injury to his left hand after falling while playing basketball as a pretrial detainee at the MCC.

11.      Experiencing constant, severe pain in his left hand – which had also swollen – Plaintiff first sought treatment from the MCC on or about May 13, 2018.

12.      On or about May 21, 2018, Plaintiff had his hand X-rayed, which revealed he had fractured his thumb.  Specifically, the X-ray revealed Plaintiff had an acute, comminuted, displaced, intra-articular fracture at the base of his left first metacarpal bone.

2

13.     Plaintiff was referred to a hand specialist, Dr. Orhan Kaymakcalan, at the Mount Sinai Hospital Medical Center in Chicago, Illinois.

14.     Dr. Kaymakcalan confirmed Plaintiff fractured his left thumb and recommended surgery.  Indeed, Plaintiff was told that there was no real alternative to surgery.  He was also told that without surgery, he would develop arthritis and continue to experience severe pain at the fracture site for the rest of his life.  Dr. Kaymakcalan explained the best management for Plaintiff's fracture was arthrodesis of the carpometacarpal joint of Plaintiff's left thumb.

15.     On or about July 27, 2018, Dr. Kaymakcalan performed this procedure on Plaintiff's left hand.

16.     As part of the operation, Dr. Kaymakcalan inserted three Kirschner wires (often referred to as "K-wires" or "pins").  Pins are used to stabilize a fractured bone to facilitate the healing of a fractured bone.

17.     At the end of the operation, a bulky hand dressing was applied to Plaintiff's left hand.

**B.     Defendant Removes and Discards One of the Surgical Pins from Plaintiff's Hand Without Consulting Knowledgeable Medical Authority.**

18.     Following the surgery, Plaintiff continued to be in pain.

19.     Approximately a week after the surgery – on or about August 2, 2018 – Defendant changed Plaintiff's dressing.  No pin was displaced or removed during this dressing change.

20.     On or about August 7, 2018, Defendant changed Plaintiff's dressing again at the MCC Health Services.  This time, however, one of the surgical pins was pulled out approximately half of an inch while Defendant was changing the dressing.

21.     Defendant acknowledged in front of Plaintiff that she committed an error by pulling up the pin while she was changing the dressing.

3

22.     Defendant left the room, returned, and told Plaintiff that she tried to make a few calls but received no answer.  Defendant told Plaintiff she was unable to discuss the protruding pin with the MCC Clinical Director, Dr. Brij Mohan.

23.     Defendant also did not consult with Dr. Bonnie Nowakowski, who was at the MCC during the incident.

24.     Having not consulted a knowledgeable medical professional and having not consulted Plaintiff, Defendant proceeded to completely remove the pin from Plaintiff's hand.

25.     Defendant's removal of the surgical pin caused Plaintiff severe pain.

26.     Defendant proceeded to discard the removed pin in the garbage.

27.     Shortly after Defendant removed and discarded the pin, Dr. Brij Mohan arrived at the waiting area of the MCC Health Services and strongly reprimanded Defendant for removing and discarding the pin in front of Plaintiff and others in the waiting area.

28.     Plaintiff also spoke with Dr. Mohan and an administrator at the MCC Health Services, Ms. Zaida Ndife, who told Dr. Mohan that Defendant's conduct was unacceptable.

29.     Dr. Mohan created an order that personnel should take caution to avoid removing Plaintiff's pins when changing his dressing and that the pins should not be removed.

**C.      Defendant Fabricates Her Notes.**

30.     In Defendant's medical notes, she wrote one of Plaintiff's surgical pins was accidentally pulled out two inches from the insertion site.  She further wrote that she secured the pin with gauze and tape.

31.     She then claimed to have called the hand surgeon's office for guidance.  She claimed she was told by "P.A. Antonio Alserez" – indirectly through the secretary, "Janet,"

4

relaying the information – that she was to remove the pin if Plaintiff could not be sent to the hand surgeon's office that day.

32.     Defendant never told Plaintiff she had ever consulted with the hand surgeon's office when she removed the pin from his hand.

33.     In fact, Defendant told Plaintiff the opposite:  she told him she never connected with anyone on the phone.

34.     Moreover, neither "P.A. Antonio Alserez" nor "Janet" examined the condition of Plaintiff's hand.

**D.     Plaintiff Has a Second Surgery on His Left Hand and Continues to Suffer from Pain and Weakness in His Hand.**

35.     Following the incident, Dr. Mohan placed an urgent consultation request so that Plaintiff could see the hand surgeon.

36.     On or about August 9, 2018, Plaintiff saw Dr. Kaymakcalan.  Dr. Kaymakcalan recommended continued immobilization of Plaintiff's left hand in the immediate term but explained that complications from the removed pin may need to be addressed in the future.

37.     While Plaintiff also participated in physical therapy in the months that followed, he continued to experience severe pain, even sometimes feeling like the pain was worse than it was before he had surgery.

38.     Plaintiff's ability to perform daily tasks – such as carrying a soup bowl – remained impaired.

39.     Because Plaintiff's left hand was unable to heal, Plaintiff had to undergo a second operation on his hand.  This second surgery occurred in or around September 2019.

5

40.     As a part of this second surgery, a pin was inserted in his hand and remained in place without any issues.  The pin was removed – as scheduled – by the hand surgeon's office without complications.

41.     Since the second surgery, Plaintiff's left hand has improved.  Plaintiff experiences less pain in his hand, but Plaintiff still requires medication to manage the pain.

42.     Plaintiff also continues to be restricted from performing certain tasks – such as manual labor and lifting objects more than 10 to 15 pounds with his left hand – because of the pain and weakness he experiences in his hand.

**E.      Plaintiff Exhausted His Administrative Remedies.**

43.     Shortly after Defendant removed the surgical pin from Plaintiff's hand, Plaintiff began the administrative grievance process.

44.     The administrative grievance process started with an informal resolution procedure after the incident and continued through a final appeal denying Plaintiff's grievance by a letter dated February 10, 2020.

45.     Plaintiff explained that Defendant wrongly removed the surgical pin from his left hand, causing him severe pain and requiring him to undergo a second surgery.  Plaintiff explained that Dr. Kaymakcalan could verify that his hand continued to be in pain, was not properly healing, and needed further surgery because the pin was removed prematurely.

46.     Plaintiff also explained that Defendant removed the pin – a serious medical decision – without consulting any knowledgeable medical authority yet fabricated her medical entry stating that she talked to "Antonio Alserez" or "Janet."

47.     Plaintiff also explained that Defendant did not ask him whether she should pull out the pin.

6

48.     Contrary to Defendant's story, Plaintiff explained that Defendant's removal of the pin was against Dr. Mohan's order to not remove the pins from his left hand.

49.     Plaintiff sought an investigation into Defendant's fabricated story and information from the purported personnel Defendant claimed she consulted before removing the pin from his hand.

50.     Plaintiff also sought prompt surgery and compensation for the incident.

51.     At each stage in the administrative process, Plaintiff's grievance was denied and Plaintiff appealed each denial.  His grievance was denied in the informal grievance process (BP-8), denied by the Warden (BP-9), denied by the Regional Director (BP-10), and finally denied by the administrator of the National Inmate Appeals (BP-11).

**Cause of Action**
***Bivens* Claim Against Defendant**
**Violation of Plaintiff's Fifth Amendment Rights**

52.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53.     Under the Due Process Clause of the Fifth Amendment of the United States Constitution, Defendant was required to provide Plaintiff with constitutionally adequate medical care.

54.     Defendant failed to provide Plaintiff constitutionally adequate medical care when she deliberately removed the surgical pin from Plaintiff's left hand, causing Plaintiff severe pain and requiring Plaintiff to undergo a second surgery to heal his fractured thumb.

55.     Plaintiff's fractured hand was an objectively serious medical condition.  He experienced debilitating pain after he injured his hand and after his first surgery, and he continues to suffer from pain for which he takes medication to alleviate the symptoms.  Prior to his first operation, moreover, he was told that he would develop arthritis and have life-long pain in his

hand if he did not undergo surgery.  In addition, Plaintiff was unable to perform basic tasks after his first surgery and the pin removal, and he continues to be unable to perform certain tasks due to the condition of his hand and the pain he experiences.

56.     Defendant purposefully, knowingly, and recklessly removed the surgical pin from Plaintiff's hand.  She was fully aware of the situation of the dislodged pin, knew it was a mistake that the pin had become dislodged, and deliberately removed the pin without consulting knowledgeable medical authority or Plaintiff.

57.     Defendant's decision to remove the dislodged pin was objectively unreasonable. Even Defendant recognized that it was a mistake that the pin had become dislodged.  She claimed to have sought advice on how to proceed but told Plaintiff that she was unable to connect with any knowledgeable medical authority.  She did not consult the MCC Clinical Director or the other doctor present at the MCC.  Defendant nonetheless proceeded to remove the pin entirely from Plaintiff's hand.  Consequently, Plaintiff suffered severe pain in the moment, continued to suffer from pain following the incident, was unable to perform certain basic tasks following the incident, and eventually underwent a second surgery because his hand was unable to properly heal.  Further, Dr. Mohan strongly reprimanded Defendant immediately following the incident.  Her acts and omissions were also contrary to Dr. Mohan's order not to remove the pins inserted in Plaintiff's left hand.  Moreover, Defendant fabricated the medical notes to cover up her objectively unreasonable acts and omissions.

58.     Indeed, Defendant's acts and omissions would even amount to deliberate indifference – the standard applied for claims brought under the Eighth Amendment of the United States Constitution.

59.     At all times during the incident, Defendant was acting under the color of federal law in her role as a Nurse Practitioner at the MCC Health Services Department.

## Relief Requested

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order:

1.     Awarding Plaintiff compensatory damages in an amount to be determined at trial against Defendant for the matters alleged in this Second Amended Complaint;

2.     Awarding Plaintiff punitive damages in an amount to be determined at trial against Defendant for the matters alleged in this Second Amended Complaint;

3.     Awarding Plaintiff attorneys' and expert fees; and

4.     Awarding such other and further relief as the Court deems equitable and just.

## Jury Demand

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: May 19, 2022                    Respectfully submitted,

                                       **Jerome Choice**

                                       By: */s/ Stephen Schwab*
                                       Stephen Schwab (IL-6183518)
                                       Robert Muttilainen (IL-6333123)
                                       DLA Piper LLP (US)
                                       444 W. Lake Street, Suite 900
                                       Chicago, IL 60606
                                       (312) 368-4000
                                       stephen.schwab@dlapiper.com
                                       robert.muttilainen@dlapiper.com

                                       *Counsel for Mr. Jerome Choice*

9