IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEROME CHOICE, | |
| Plaintiff, | Case No. 21 C 0060 |
| v. | Hon. Marvin E. Aspen |
| PATRICIA MICHALAK, | Hon. M. David Weisman |
| Defendant. | |

**<u>MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

Stephen Schwab
Robert Muttilainen
**DLA Piper LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606
(312) 368-4000
stephen.schwab@dlapiper.com
robert.muttilainen@dlapiper.com

Dated: July 8, 2022                                    *Counsel for Mr. Jerome Choice*

**Introduction**

In its screening order, the Court found Mr. Choice had a cognizable *Bivens* claim against Defendant Patricia Michalak for providing constitutionally inadequate medical care. Despite this order, Defendant now moves to dismiss Mr. Choice's claim by incorrectly arguing that the claim neither amounts to a constitutional violation nor may even be brought under *Bivens*. In doing so, Defendant wrongly distorts (and directly contradicts) the Second Amended Complaint's ("SAC") well-pleaded allegations. Defendant further draws immaterial distinctions between Mr. Choice's claim and the *Bivens* inadequate-care claim blessed by the Supreme Court in *Carlson v. Green*, 446 U.S. 14 (1980). The Court should reject these attempts to circumvent the screening order.

Defendant also asserts qualified immunity. The Court should reject this premature attempt to disclaim liability since her defense rests on a factual dispute with Mr. Choice's well-pleaded allegations. In any event, Defendant's conduct as alleged violated clearly established law. For these and the following reasons, the Court should deny Defendant's motion to dismiss.

**Background**

**A.     The Court finds Mr. Choice has a cognizable *Bivens* inadequate-care claim.**

In the Original Complaint, Mr. Choice alleged Defendant "err[ed]" by "dislodging" from his hand "a pin that had been inserted by an orthopedic surgeon" while Defendant was changing "the dressing . . . on [his] left hand that had recently been operated on." ECF 14 at 4. He further alleged that Defendant "then made the decision to completely remove the pin . . . causing [him] severe pain" and requiring him to undergo another "painful surger[y]." *Id.* at 4-5. Mr. Choice explained that Defendant "attempted to cover up" "how things actually happened" by creating a story that she was instructed to remove the pin when, in reality, she "made the call to pull the pin entirely on her own." *Id.* Based on these allegations, and applying the motion to dismiss standard,

1

the Court held Mr. Choice could "proceed on [h]is claim" against Defendant for inadequate care for "remov[ing] the pin entirely" from his hand. ECF 13 at 2-5.

**B.      Mr. Choice amends his Original Complaint with allegations bolstering his claim.**

After screening the Original Complaint, the Court appointed the undersigned to represent Mr. Choice and permitted Mr. Choice to file an amended complaint. ECF 46. Mr. Choice filed his SAC, bolstering his claim with allegations such as:

- After fracturing his left thumb, the orthopedic surgeon told Mr. Choice he would "experience severe pain at the fracture site for the rest of his life" if he did not undergo surgery. ECF 61 ("SAC") ¶¶ 10, 14.

- The orthopedic surgeon inserted three pins in Mr. Choice's left hand "to stabilized [the] fractured bone to facilitate [its] healing." *Id.* ¶ 16.

- After the pin was pulled up during a dressing change, Defendant "left the room, returned, and told [Mr. Choice] that she tried to make a few calls but received no answer." She then claimed "she was unable to discuss the protruding pin with the MCC Clinical Director." She also "did not consult" another doctor "who was at the MCC during the incident." *Id.* ¶¶ 21-23.

- After she removed the pin without "consult[ing]" anyone, Defendant "discarded the . . . pin in the garbage." *Id.* ¶¶ 24, 26.

- The Clinical Director "strongly reprimanded Defendant for removing and discarding the pin," and an "administrator at the MCC Health Services" also stated "Defendant's conduct was unacceptable." *Id.* ¶ 27-28.

- The Clinical Director "created an order that personnel should take caution to avoid removing [Mr. Choice's] pins when changing his dressing and that the pins should not be removed." *Id.* ¶ 29.

## Argument

**I.      The SAC properly pleads an inadequate-care claim.**

The Court already found the Original Complaint properly pleaded an inadequate-care claim. ECF 13 at 5. The SAC only bolsters the allegations against Defendant. Defendant transparently reworked her summary judgment motion into a motion to dismiss, asserting the

2

allegations amount to nothing more than negligence or a disagreement with Defendant's medical care. In support, Defendant continues to rely on her summary judgment assertion that her notes directly contradict the allegations. The Court should reject Defendant's attempt to transform her motion into one for summary judgment. Indeed, all Defendant has done is create a question of fact. The Court should disregard Defendant's mischaracterizations and again find a properly pleaded inadequate-care claim.

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of [a] claim showing the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In construing the complaint, [courts] accept all well-pleaded facts as true and draw reasonable inferences in the [plaintiff's] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

A pretrial detainee's inadequate-care claim is governed by an "objective reasonableness" standard. *McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018); *Daniels v. Janca*, 2019 WL 2772525, at *4 (N.D. Ill. July 2, 2019). Pursuant to this standard, a complaint must plausibly allege "two steps." *McCann*, 909 F.3d at 886. First, the complaint must allege "the medical defendant[] acted purposefully, knowingly, or perhaps even recklessly when [she] considered the consequences of [her] handling of [plaintiff's] case." *Id.* (citation omitted). This inquiry focuses on the defendant's "state of mind with respect to the bringing about of certain physical consequences in the world," rather than her "state of mind with respect to" the constitutionality of her conduct. *Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015). "A showing of negligence or even gross negligence will not suffice." *McCann*, 909 F.3d at 886. Thus, a "deliberate[] cho[ice]"

of a medical plan "knowing" the patient's medical condition satisfies step one, whereas "forget[ting]" to care for a patient when the caring provider took vacation might not. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 354 (7th Cir. 2018); *see also Kingsley*, 576 U.S. at 392-93, 395-96 (stating no party denied first step was met where defendants deliberately restrained and stunned plaintiff and did not "unintentionally trip[] and fall[] on him" or deploy the Taser "by accident").

Second, the plaintiff must allege the defendant's "conduct was objectively [un]reasonable." *McCann*, 909 F.3d at 886. The governing standard "focus[es] on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care" and "gauge[s] objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id.* The SAC adequately pleads both steps.[1]

With respect to step one, Defendant's conduct was purposeful, intentional, and reckless – not simply an "unintentional[]" "accident." *Kingsley*, 576 U.S. at 395-96. She was aware of the protruding pin, realizing it was an "error" that it had come up while she was changing Mr. Choice's dressing. SAC ¶ 21. She claimed to "make a few calls but received no answer" and claimed to be "unable to discuss the protruding pin with the" Clinical Director. *Id.* ¶ 22. She next "deliberately removed the pin" without having received any competent medical direction. *Id.* ¶ 56. Her conduct was therefore a "deliberate[] cho[ice]" of action "knowing" the circumstances attendant to the surgical pin protruding from Mr. Choice's recently operated on hand. *Miranda*, 900 F.3d at 354.

Defendant would overcome Mr. Choice's well-pleaded allegations by wrongly relying on her notes. According to Defendant, she did not act "purposefully, knowingly, or recklessly" because she purportedly "remove[d] the pin . . . in accordance with . . . medical advice" she

---

[1] The SAC also properly pleads an objectively serious medical need. *See, e.g.*, *Meherg v. Skrivan*, 2020 WL 374684, at *6 (N.D. Ill. Jan. 22, 2020). Defendant makes no argument to the contrary, nor could she. *See Roe v. Elyea*, 631 F.3d 843, 861 (7th Cir. 2011) (noting that "sufficient[ly]" serious "medical conditions" include "a dislocated finger" and "a broken wrist").

4

received from the "orthopedic surgeon's office." ECF 67 at 5 (emphasis omitted). Defendant's assertions, however, directly contradict the well-pleaded allegations that she did not discuss the protruding pin with anyone. SAC ¶ 22-23. On a motion to dismiss, the Court must accept these well-pleaded allegations as true and construe them in the light most favorable to Mr. Choice. *Roberts*, 817 F.3d at 564. Defendant's reliance on her notes is thus inappropriate.

With respect to step two, Defendant's "conduct was objectively [un]reasonable" given "the totality of facts and circumstances." *McCann*, 909 F.3d at 886. Defendant – a nurse practitioner responsible for changing the dressing protecting Mr. Choice's hand – completely removed the protruding surgical pin from Mr. Choice's hand that was meant to stabilize Mr. Choice's fractured thumb so that it would properly heal. SAC ¶¶ 16, 19-21. She did so, moreover, without consulting any knowledgeable medical authority – which her unanswered calls plainly confirmed. *Id.* ¶¶ 22-24. After she removed and discarded the pin, the Clinical Director "strongly reprimanded Defendant" for her conduct and a health administrator stated "Defendant's conduct was unacceptable." *Id.* ¶¶ 27-28. Defendant then fabricated her notes to create a narrative that would cover up her actions. *Compare id.* ¶¶ 20-26, *with id.* ¶¶ 30-34. Meanwhile, Mr. Choice was in severe pain, could not perform daily tasks with his left hand, and had to undergo a second surgery because his thumb did not properly heal. *Id.* ¶¶ 25, 37-39. Given these circumstances, Defendant's conduct was not "mere negligence," and Mr. Choice's claim is not simply a disagreement with the "care" he received. Quite to the contrary, Defendant's conduct was objectively unreasonable.

Indeed, the Court has already concluded that Mr. Choice has stated an inadequate-care claim and that "further factual development is warranted as to the reasonableness of [Defendant's] decision to remove the pin entirely." ECF 13 at 5. Other courts in this Circuit have found similar allegations sufficient to survive a motion to dismiss. For instance, the court in *Budd v. Seelye* found

5

that the plaintiff pleaded objectively unreasonable conduct where a nurse "prescribed Librium to counteract [a pretrial detainee's] possible alcohol withdrawal . . . without consulting a doctor." 2020 WL 6135678, at *1-2 (S.D. Ind. Oct. 19, 2020). The medication did not alleviate the pretrial detainee's symptoms, and the detainee tragically became unresponsive and later died. *Id.* at *1. Here, Defendant's decision to remove the surgical pin entirely from Defendant's hand without consulting knowledgeable medical authority, causing serious consequences (albeit less dire than in *Budd*) was likewise objectively unreasonable.[2]

Finally, whether the initial dislodging of the pin "was an accident amounting to nothing more than negligence" is immaterial. ECF 13 at 5. The Court already held "further factual development is warranted as to the reasonableness of [Defendant's] decision to remove the pin entirely." *Id.*; *see also Duncan v. Duckworth*, 644 F.2d 653, 654 (7th Cir. 1981) (bifurcating a medical scenario). Accordingly, the Court should find the SAC properly pleads an inadequate-care claim.[3]

## II. Mr. Choice's inadequate-care claim is a classic *Bivens* claim.

To determine whether a *Bivens* claim is appropriate, courts conduct a two-step inquiry. *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022). Courts first ask whether the claim "presents 'a new *Bivens* context.'" *Id.* (citation omitted). A context is "new" if it is "meaningfully different from the three cases in which the [Supreme] Court has implied a [*Bivens*] action." *Id.* (cleaned up). If

---

[2] *See also Cottrell v. Quality Care*, 2020 WL 2404805, at *1-2 (N.D. Ind. May 12, 2020) (objectively unreasonable to not provide pretrial detainee a wheelchair, brace, or crutches for his injured foot, causing the detainee to suffer while "hobbl[ing] around on one foot"); *Bell v. Loftus*, 2021 WL 5113947, at *2 (N.D. Ind. Nov. 3, 2021) (objectively unreasonable for a doctor to simply "karate chop[]" a pretrial detainee's back where the detainee had severe back pain).

[3] Defendant also wrongly invokes the Eighth Amendment standard. ECF 67 at 4. Since *Miranda*, however, the Seventh Circuit has unequivocally held that the objective reasonableness standard governs inadequate-care claims by pretrial detainees. 900 F.3d at 352. Moreover, as explained above, the SAC does not simply plead a disagreement with Defendant's conduct nor simply allege negligence. And, as explained below, the allegations in the SAC also amount to deliberate indifference in any event.

not, the plaintiff may proceed with his *Bivens* claim. *See Bistrian v. Levi*, 912 F.3d 79, 91-92 (3d Cir. 2018). Otherwise, courts then consider whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (citation omitted).

### A. Inadequate-care claims are not "new."

A federal prisoner's inadequate-care claim is one of the three classic *Bivens* claims. *Egbert*, 142 S. Ct. at 1802 (citing *Carlson*, 446 U.S. 14). Mr. Choice's *Bivens* claim is thus not "new." *Laurent v. Borecky*, 2018 WL 2973386, at *5 (E.D.N.Y. June 12, 2018) (holding a Fifth Amendment inadequate-care claim by a pretrial detainee is not a "new" *Bivens* claim); *Torres v. Licon Vitale*, 2020 WL 3872151, at *3 (S.D.N.Y. July 9, 2020) (same).

Defendant attempts to insulate herself from liability based on two erroneous theories. First, Defendant argues that this claim is "new" because Mr. Choice was a pretrial detainee (not a convicted prisoner) at the time of the incident and must bring his claim pursuant to the Fifth Amendment (not the Eighth Amendment). ECF 67 at 10. Defendant notes that the Fifth Amendment standard is less stringent than the Eighth Amendment standard. *Id.*

This "difference," however, is not "meaningful." In *Bistrian v. Levi*, the Third Circuit rejected this very argument for a pretrial detainee's failure to protect claims. 912 F.3d at 91. The Third Circuit explained that "the Supreme Court has, pursuant to *Bivens*, recognized a failure-to-protect claim under the Eighth Amendment." *Id.* (citation omitted). The Third Circuit found that the fact that pretrial detainees must bring their claims under the Fifth Amendment rather than the Eighth Amendment "does not warrant the conclusion that . . . [the court] would be extending *Bivens* to a new context." *Id.* Rather, the Third Circuit explained, the Supreme Court's acceptance of an Eighth Amendment failure to protect claim "practically dictates [this finding] because it is a

7

given that the Fifth Amendment provides the same, *if not more*, protection for pretrial detainees than the Eighth Amendment does for imprisoned convicts." *Id.* (emphasis added).

*Bistrian*'s conclusion applies equally here. The Supreme Court has recognized a convicted prisoner's right to bring an inadequate-care claim under the Eighth Amendment. *Carlson*, 446 U.S. 14. The fact that the Fifth Amendment "protect[s] pretrial detainees" "the same, if not more, . . . than the Eighth Amendment" does not mean this is a "new context." *Bistrian*, 912 F.3d at 91; *see also Miranda*, 900 F.3d at 350. Instead, the greater protection for pretrial detainees "dictates" that Mr. Choice's claim is not "new." *Bistrian*, 912 F.3d at 91.

Defendant next argues that Mr. Choice's claim is "new" because the challenged conduct was not "life-threatening."[4] But this purported distinction is without a "meaningful" difference and distorts the law governing inadequate-care claims. In describing the *Bivens* extension in *Carlson*, the Supreme Court has explained it found a "new cause[] of action . . . for a federal prisoner's inadequate-care claim under the Eighth Amendment." *Egbert*, 142 S. Ct. at 1802. Defendant provides no Supreme Court or other binding precedent that even suggests inadequate-care claims are cognizable only in life-threatening situations. The Supreme Court's explanation of *Carlson* certainly does not make any such hints. Rather – and consistent with the Supreme Court's articulation of inadequate-care claims since *Estelle v. Gamble*, 429 U.S. 97 (1976) – a plaintiff only needs to show a serious medical need. In fact, in *Carlson*, the Supreme Court considered whether there were "serious medical needs," not whether they were life-threatening. 446 U.S. at 16-17 & n.1. Moreover, the Seventh Circuit has recognized *Bivens* actions related to treatment for

---

[4] Defendant also claims that the challenged conduct was not an "emergency." ECF 67 at 8. But that characterization of the incident directly contradicts Mr. Choice's well-pleaded allegations. Following the incident, Mr. Choice was in severe pain and the Clinical Director put in an "urgent consultation request" with the hand surgeon. SAC ¶ 25, 35. Regardless, the same arguments for why Defendant's "life-threatening" distinction is inapposite apply with equal force for her "emergency" distinction.

"non-life-threatening but painful conditions," adhering to the "objectively serious medical condition" test. *Arnett v. Webster*, 658 F.3d 742, 750, 753 (7th Cir. 2011); *see also Gil v. Reed*, 381 F.3d 649 (7th Cir. 2004) (*Bivens* claim for non-life-threatening condition). The Court should not draw a line in *Carlson* that neither the Supreme Court nor the Seventh Circuit has ever drawn.[5]

The three Northern District of Texas cases cited by Defendant are also distinguishable. In each case, the plaintiff alleged only negligence or a mere disagreement with the medical care they received. *See Broadfield v. United States*, 2022 WL 1478561, at *4 (N.D. Tex. Apr. 20, 2022) (explaining plaintiff's allegations "reflect his disagreement with the medical care he has received" rather than demonstrating a constitutional violation); *Dissler v. Zook*, 2021 WL 2598689, at *4 (N.D. Tex. May 7, 2021) (explaining plaintiff alleged, "at most, negligence"); *Manzo v. Mateware*, 2021 WL 6284098, at *4 (N.D. Tex. Dec. 13, 2021) (explaining plaintiff alleged "negligence and medical malpractice"). Mr. Choice's allegations amount to conduct that was objectively unreasonable (as explained above) and would amount to deliberate indifference (as explained below). Therefore, Mr. Choice's claim is not an attempt to extend a *Bivens* claim to a "new" context since the medical care Mr. Choice challenges was not mere negligence. In sum, Mr. Choice's *Bivens* claim is not "new," and the Court should allow him to proceed on his claim.[6]

**B.     No "special factors" counsel against Mr. Choice's inadequate-care claim.**

Since Mr. Choice has alleged inadequate care that amounts to more than negligence or gross negligence, the Court should permit Mr. Choice to advance his *Bivens* claim even if it were

---

[5] Defendant even concedes many courts have concluded inadequate-care claims were not new even under non-life-threatening circumstances. *See* ECF 67 at 10 (citing *Kourani v. Sproul*, 2022 WL 1185126 (S.D. Ill. Apr. 21, 2022); *Gelazela v. United States*, 2022 WL 843446 (E.D. Cal. Mar. 22, 2022)).

[6] To the extent Defendant is arguing the Court should consider prison operations in treating detainees separate from her argument that *Bivens* inadequate-care claims are only cognizable for life-threatening, emergency situations or that Mr. Choice's claim sounds only in negligence, her argument here too is wrong. *See* ECF 67 at 9. Inadequate-care claims "have been allowed for many years," so "there is no good reason to fear that allowing [Mr. Choice's] claim will" disrupt prison operations. *Bistrian*, 912 F.3d at 93.

to find his claim "new." To hold otherwise would create an unjust result: convicted prisoners but not pretrial detainees would be entitled to a *Bivens* remedy for inadequate care. This imbalance would flip the punishment model on its head. "Pretrial detainees stand in a different position" from convicted prisoners because pretrial detainees "are still entitled to the constitutional presumption of innocence" and "the punishment model is inappropriate for them." *Miranda*, 900 F.3d at 350 (citing *Kingsley*, 135 S. Ct. at 2475). Importantly, pretrial detainees "are protected from certain abusive conditions," and courts have long understood that pretrial detainees "are entitled to at least [as] much protection" as convicted prisoners. *Id.*; *see also Bistrian*, 912 F.3d at 91. The Court thus should not exclude pretrial detainees from pursuing a remedy for abusive conditions based on their status. Their presumed innocence should afford them more, not less, protection than convicted prisoners. *See Morgan v. Shivers*, 2018 WL 618451, at *7 n.4 (S.D.N.Y. Jan. 29, 2018).

Moreover, there are no "special factors" that counsel against permitting Mr. Choice to proceed with his *Bivens* claims. Defendant's suggestion of purported "alternative remedies" do not counsel against permitting Mr. Choice's claim. As courts have recognized, "the existence of an FTCA remedy does not foreclose an analogous remedy under *Bivens*." *Bistrian*, 912 F.3d at 92; *Hoffman v. Preston*, 26 F.4th 1059, 1068 (9th Cir. 2022). In fact, the Supreme Court held the same in *Carlson*, explaining that it is "crystal clear that Congress intended the FTCA and *Bivens* to serve as parallel and complementary" sources of liability. 446 U.S. at 20. Indeed, "the FTCA itself appears to recognize the complementary existence of *Bivens* actions by creating an exception for suits against individual federal officers for constitutional violations." *Bistrian*, 912 F.3d at 92. So, "the FTCA is plainly not a special factor counseling hesitation in allowing a *Bivens* remedy." *Id.*

The other three purported remedies also ring hollow. "The administrative grievance process is not an alternative because it does not redress [Mr. Choice's] harm, which could only be

10

remedied by money damages." *Id.*; *see also Williams v. Baker*, 487 F. Supp. 3d 918, 928-29 (E.D. Cal. 2020). Likewise, the "injuncti[ve]" and "prospective relief" suggested by Defendant is "inadequate to cure the harm [Mr. Choice] already suffered." *Hoffman*, 26 F.4th at 1068. "Accordingly, there are no true alternative remedies counseling against allowing a *Bivens* remedy for a Fifth Amendment claim based on" inadequate care. *Bistrian*, 912 F.3d at 92.[7]

Defendant's reliance on the PLRA is also unsound. Contrary to Defendant's arguments, the PLRA does not foreclose a damages remedy against federal prison officials by silence or by establishing an exhaustion requirement. *See Bistrian*, 912 F.3d at 92-93; *Hoffman*, 26 F.4th at 1070-71; *Pinson v. U.S. Dep't of Justice*, 514 F. Supp. 3d 232, 244 n.6 (D.D.C. 2021). As several courts have explained, "the PLRA is best read as reflecting congressional 'intent to make more rigorous the process prisoners must follow' before bringing a federal damages lawsuit, rather than a desire to prevent prisoners from seeking damages in federal court altogether." *Hoffman*, 26 F.4th at 1070-71 (citation omitted). Indeed, the PLRA is "a statute about process, not the substantive requirements for relief." *Id.* at 1071. The logical extension of Defendant's argument would "foreclose all *Bivens* claims brought in the prison context," which would "run counter to the Supreme Court's ruling in *Carlson*," *Pinson*, 514 F. Supp. 3d at 244 n.6 (citation omitted), and eliminate the very causes of action the PLRA seeks to regulate, *Bistrian*, 912 F.3d at 93.

Finally, Defendant's callous suggestion that permitting claims like Mr. Choice's would "additionally burden" prisons and federal officials is immaterial and surprising. Inadequate-care claims "have been allowed for any years" so "there is no good reason to fear that allowing [Mr. Choice's] claim will unduly affect the independence of the executive branch in setting and

---

[7] Defendant's parenthetical suggestion that state tort law might have been available "if [Defendant] were acting outside the scope of her employment," ECF 67 at 11, is also unpersuasive, *see Hoffman*, 26 F.4th at 1066-68, devoid of argument that she was acting outside of the scope of her employment, and inconsistent with the SAC, *see* SAC ¶ 7, 59.

11

administering prison policies." *Id.* Moreover, Mr. Choice's claim "fits squarely within *Bivens*' purpose of deterring misconduct by [federal] officials." *Id.* It would further be a "miserable contention" that prison officials need not fear any consequence for failing to "act" the same toward (or "a modicum more humanely toward") pretrial detainees as toward convicted prisoners. *Terry v. Cnty. of Milwaukee*, 357 F. Supp. 3d 732, 750 (E.D. Wis. 2019). Accordingly, no "special factors" prevent Mr. Choice from proceeding with his claim.

### III. Defendant is not entitled to qualified immunity.

#### A. Defendant prematurely rests on a factual dispute.

Defendant's qualified immunity defense is "inappropriate" because it rests on her factual dispute with well-pleaded allegations. Where the qualified immunity "'depends on the facts of the case,'" "resolution of [the] case on qualified immunity grounds is 'inappropriate'" at the motion to dismiss stage. *Burlet v. Baldwin*, 452 F. Supp. 3d 801, 811 (N.D. Ill. 2020) (quoting *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001)). Defendant asserts that she "removed the pin that had become dislodged after consulting with [the] orthopedic surgeon's office." ECF 67 at 20. But the SAC alleges that Defendant told Mr. Choice she was unable to consult any knowledgeable medical authority yet removed the protruding pin anyway. *See* SAC ¶ 22, 24. Defendant also cites to the Court's screening order to support her assertion that Mr. Choice's claim "sound[s] in negligence." ECF 67 at 19 (citing ECF 13 at 5-6). But that order concludes just the opposite. *See* ECF 13 at 5. And the SAC alleges more than negligence. The Court should reject Defendant's qualified immunity defense at this stage of the proceedings. *See Burlet*, 452 F. Supp. 3d at 811.

#### B. Defendant's conduct as alleged violated clearly established law.

If the Court reaches the qualified immunity question at this early stage of the proceedings, the Court should reject the defense. An officer is entitled to qualified immunity unless (1) she

12

"violated a . . . constitutional right" and (2) "the unlawfulness of [her] conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what [she] is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation omitted). While "the unlawfulness must be apparent" from "pre-existing law," this does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Id.* There also may be the "'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, 138 S. Ct. at 590.

At the time of the incident, the Seventh Circuit applied the deliberate indifference standard to a pretrial detainee's inadequate-care claim. *See Miranda*, 900 F.3d at 350. This standard "requires that the prison official knew of 'a substantial risk of harm to the inmate and disregarded the risk.'" *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (citation omitted).[8] Again, Defendant's calls to medical authorities evidenced her recognition of substantial risk of harm. Her removal of the pin without medical authorization evidenced her disregard of that risk.

In many cases, even "some" provision of "medical care" can constitute deliberate indifference. *Id.* The deliberate indifference standard is met where a medical provider provided "'easier and less efficacious treatment' without exercising professional judgment." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (quoting *Estelle*, 429 U.S. at 104 n.10). For instance, the Supreme Court in *Estelle* approvingly cited to an Eighth Amendment violation where a doctor threw away a prisoner's detached "ear and stitch[ed] up the stump" rather than trying to stitch the

---

[8] An Eighth Amendment inadequate care claim also requires a showing that the prisoner's "medical condition is 'objectively, sufficiently serious.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (citation omitted). As noted above, Defendant does not and cannot challenge the severity of Mr. Choice's medical condition. *See supra*, n.1.

13

ear back on. *Estelle*, 429 U.S. at 104 n.10 (quoting *Williams v. Vincent*, 508 F.2d 541 (2d Cir. 1974)). In *Conley v. Birch*, the Seventh Circuit similarly denied summary judgment to a doctor that should have suspected an inmate's hand was fractured yet proscribed ice and pain medication rather than, for example, immobilizing his hand. 796 F.3d 742, 748 (7th Cir. 2015).

Likewise, "treatment that is so far out of bounds that it was blatantly inappropriate or not even based on medical judgment" amounts to deliberate indifference. *King v. Kramer*, 680 F.3d 1013, 1019 (7th Cir. 2012). In *King v. Kramer*, for instance, a nurse placed a patient she should have known was withdrawing from a drug that made the patient prone to seizures in "a padded cell where the intercom system was difficult to hear, the camera image quality was too poor to clearly identify his movements, and the nurses did not have direct access to him." *Id.* The patient ended up dying in this cell several hours later because of the withdrawal that caused the patient's seizures. *See id.* at 1017. The Seventh Circuit found this evidence was enough to defeat the nurse's summary judgment argument that she was not deliberately indifferent as a matter of law.

Defendant's conduct was so deficient that it also constituted deliberate indifference. Rather than consulting with knowledgeable medical authority, Defendant chose the "easier and less efficacious treatment" by removing and throwing out the protruding pin from Mr. Choice's hand. *Petties*, 836 F.3d at 730 (citation omitted). This decision was much like the "easier and less efficacious treatment" in *Williams* and *Conley* where the defendants there merely masked the problem. Indeed, her conduct exacerbated the situation and was chastised by the Clinical Director and a health administrator. Hence, Defendant's decision to entirely remove and discard the pin was also "blatantly inappropriate" and not "based on medical judgment." *King*, 680 F.3d at 1018-19. Her decision to "t[ake] matters further" caused Mr. Choice severe pain, caused his thumb not to heal, and required him to undergo a second surgery. *Id.* Such conduct was not "[m]ere medical

14

malpractice or a disagreement with . . . medical judgment." *Edwards*, 478 F.3d at 831. Like in *Williams*, *Conley*, and *King*, it was deliberate indifference to a substantial risk.

In addition, the unlawfulness of Defendant's conduct had long been recognized as clearly established at the time of the incident. Knowingly providing a "course of treatment [that] was inadequate to meet [Mr. Choice's] serious medical needs" "violates clearly established law." *Petties*, 836 F.3d at 734. In fact, Defendant concedes that "pretrial detainees are entitled to adequate medical care." ECF 67 at 19 (citing *Estelle*, 429 U.S. at 107).

Defendant instead argues that "there is not a clearly established right to a *specific* treatment for a dislodged pin." *Id.* But the second prong inquiry is not so microscopic. The Seventh Circuit has explained this legal duty "need not be litigated and then established disease by disease or injury by injury." *Estate of Clark v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017). It is enough that the Supreme Court "long" ago "held that prisoners have [a constitutional] right to treatment for their 'serious medical needs.'" *Id.* (quoting *Estelle*, 429 U.S. at 104).[9] In any event, *King*, *Estelle*'s approval of *Williams*, and *Conley* all would have put a reasonable official on notice that Defendant's conduct was unconstitutional. In fact, it is obvious that Defendant's conduct was unconstitutional. *Cf. Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008) (Courts "need not check [their] common sense at the door." (citation omitted)). Defendant's qualified immunity defense thus fails.

## Conclusion

For these reasons, the Court should deny Defendant's motion to dismiss and enter an order reaffirming that Mr. Choice has alleged a constitutional violation that he can bring under *Bivens*, and denying Defendant's qualified immunity defense. Mr. Choice respectfully requests argument.

---

[9] *See also Petties*, 836 F.3d at 734; *Orlowski v. Milwaukee Cnty.*, 872 F.3d 417, 422-23 (7th Cir. 2017); *Doe v. Gustavus*, 294 F. Supp. 2d 1003, 1012 (E.D. Wis. 2003); *Keller v. Walton*, 2017 WL 5713379, at *3 (S.D. Ill. Nov. 28, 2017); *Tyner v. Nowakowski*, 2021 WL 4318085, at *8 (N.D. Ill. Sept. 23, 2021).

| | |
|---|---|
| Dated: July 8, 2022 | Respectfully submitted,<br><br>*/s/ Stephen Schwab*<br>Stephen Schwab (IL-6183518)<br>Robert Muttilainen (IL-6333123)<br>DLA Piper LLP (US)<br>444 W. Lake Street, Suite 900<br>Chicago, IL 60606<br>(312) 368-4000<br>stephen.schwab@dlapiper.com<br>robert.muttilainen@dlapiper.com<br><br>*Counsel for Mr. Jerome Choice* |